## Nancy Lane v. James L. Schenck, Jr.

[614 A.2d 786]

No. 91-447

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed May 22, 1992

*Dorothy L. Helling*, Montpelier, for Appellants Minor Children.

*Steven A. Adler* of *Gensburg Axelrod & Adler*, St. Johnsbury, for Plaintiff-Cross-Appellant.

*M. Jerome Diamond* and *Kimberly R. Elia* of *Diamond & Associates, P.C.*, Montpelier, for Defendant-Appellee.

**Morse, J.** Plaintiff-mother appeals a family court order modifying her parental rights and responsibilities (custody) by imposing a condition that she reside in a location requiring no more than a four-hour drive from defendant-father's residence. The modification was the court's response to father's request for custody of the couple's three children after mother announced her intent to attend law school in Iowa. We must decide what standard applies in a proceeding brought under 15 V.S.A. § 668 (modification of custody) when, without agreement, a custodial parent decides to move a significant distance from the noncustodial parent. The family court determined that it was in the children's best interests to remain in mother's custody relatively near father's home. The court fashioned its order as it did because of mother's testimony that she would not move to Iowa without the children and that keeping custody was her first priority. We reverse and remand because the court failed to show sufficient deference to the mother's decision to relocate. The proper test is whether the children's best interests would be better served if they were placed in father's custody in Vermont given mother's choice to live and go to school in Iowa.

The parents in this case were divorced in 1989, after nine years of marriage. The court awarded mother the parental rights and responsibilities of the three minor children, who were eleven, eight, and seven years old at the time of the modification hearing in the summer 1991. Father was given parent-child contact (visitation) with the children on alternate weekends and holidays, and at such other times as agreed by the parties. Since then, mother and children have lived in Cabot, Vermont, and father has remarried and resides nearby.

After the divorce, mother announced that she was preparing to move with the children to Iowa City in order to attend law school at the University of Iowa. Father then sought, in accordance with 15 V.S.A. § 668, to modify the divorce judgment, requesting a change in custody. Father also requested, in the event custody was not changed, a modification of the visitation

and child support portion of the divorce judgment to account for the burdens of increased travel time and cost.

The family court found that both parents were fit custodians, but that

> the children have a better and healthier relationship with Ms. Lane. They love their mother, strongly prefer the present custodial situation, would be devastated by a change in custody and want to accompany her to Iowa City.
>
> . . . .
>
> Ms. Lane is the primary care provider. This fact is beyond dispute, and is acknowledged by Mr. Schenck. The children have a warm, loving relationship with her, and would be adversely affected if removed from her custody. They want to remain with her, and should. . . .

Father, according to the court, is

> a sterner disciplinarian and has consistently used corporal punishment on the children. On at least two occasions, his disciplining of [one of the children] has been excessive (slap in face and holding off ground against wall). The children, especially [this child], believe their father is unfair and unpredictable in his displays of anger and use of discipline, and occasionally fear him. Nevertheless, the children generally enjoy their time with him. Mr. Schenck is generally a constructive force in their lives.
>
> . . . .
>
> Mr. Schenck's displays of anger and use of physical discipline have been excessive and unpredictable at times. This has not been good for the children's physical and emotional well being. Thus, the environment is safer in their mother's home.

In addition, the court found that the children had not adjusted well to the divorce, "are not rooted in the community [, and] leaving Cabot would not be detrimental to them." The court did not think father would be able to "meet the children's developmental needs" without counselling. The court also concluded that "Mr. Schenck's primary goal is not to be awarded physical responsibility for the children but to prevent Ms. Lane from moving to Iowa with them." The mother's commitment to the children was described by the court:

If Ms. Lane were required to choose between 1) going to Iowa Law School and losing custody, or 2) remaining in Vermont (or going to some closer school) and keeping custody, she would opt, without hesitation, for the latter alternative. Maintaining custody is paramount.

The court framed the critical issue as follows:

The question is whether it is in the children's best interest to make the move. If the answer is yes, then of course the children would accompany their mother to Iowa City. If the answer is no, then the children would continue to live with Ms. Lane since she would not go to Iowa without them.

The move to Iowa, according to the court, would not necessarily be beneficial due to adjustment demands of a new community, mother's busy schedule, and the present emotional problems of the children. Under these circumstances, the court concluded, the children's needs could not adequately be met with mother in law school and in the absence of father's presence. The order of the court provided:

Defendant's motion to modify the custody order is granted as follows: Ms. Lane's custodial rights shall be subject to the right of Mr. Schenck to have meaningful contact with the children. For purposes of this case, meaningful contact is physical contact that can be achieved by a drive of no more than four hours one way.

Because of the emotional problems that the children are now suffering, they shall be enrolled in counseling. Mr. Schenck shall also enroll in counseling to improve his relationship with his children and his parenting skills.

I.

Mother's first argument is that the family court erred in finding that changed circumstances existed to justify modification under 15 V.S.A. § 668. That statute gives the trial court authority to modify a custodial order "upon a showing of real, substantial and unanticipated change of circumstances . . . if it is in the best interests of the child." Mother argues that father knew of her intentions to attend law school long before the divorce was granted. Contrary to her assertions, however, the trial court found the change was unanticipated. Although her

plans to attend graduate school were the subject of ongoing discussions between the couple, mother never indicated that she still intended to return to school during separation and while the parties were going through divorce proceedings, which included a contested custody dispute. In addition, mother had taken a full-time job at the Cabot Creamery and had set up residence in Cabot.

■ The court found that, at the time of the divorce, father reasonably concluded mother had abandoned her educational plans. Mother's reinitiation of her plans, involving a move to another jurisdiction, was a changed circumstance found by the court to be "unanticipated." The threshold determination for a motion to modify is discretionary, *Hayes v. Hayes*, 144 Vt. 332, 336, 476 A.2d 135, 138 (1984), and we conclude that the court did not abuse its discretion in reaching the merits of the motion.

## II.

■■ Mother next argues that the trial court unconstitutionally abridged her right to travel by conditioning her retention of custody on her agreement to attend law school at a location within a four-hour drive from father's residence. We do not view the issue as falling solely within the right to travel, since either party is free to move wherever the party wants. The issue actually involves a determination of the proper parental custodian, given the best interests of the children. While freedom of movement from state to state is implicated, it is unnecessary to elevate the issue presented here to a constitutional dimension. Where a parent lives in relation to the other parent is just one factor of many to be considered in formulating a custody decision. Certainly, the visiting parent could not defeat the custodial parent's rights and responsibilities by asserting a constitutional right to travel.

## III.

Our determination turns on the appropriateness of the court's order in light of Vermont's provisions on parental rights and responsibilities. Section 664(1) of Title 15 defines parental rights and responsibilities as "the rights and responsibilities related to a child's physical living arrangements, parent child contact, education, medical and dental care, religion, travel and

any other matter involving a child's welfare and upbringing." The phrase "parental rights and responsibilities" in 15 V.S.A. § 665 replaced the word "custody" contained in an earlier version of the statute. See 15 V.S.A. § 652 (repealed 1986). We continue to use the words "custody" and "custodial parent" as shorthand, while recognizing that their popular sense may denote "dominion" over the children by the custodian to the exclusion of the other parent. See Note, *A Critical Look at Vermont's New Child Custody Law*, 11 Vt. L. Rev. 671, 671 n.3 (1986) (Vermont Legislature "discarded the word 'custody' because the term implied that the child was a prize to be awarded to the most 'meritorious' parent"). Section 665(a) also mandates what was not addressed in its predecessor, that parental rights and responsibilities be granted to one parent "[w]hen the parents cannot agree to divide or share" them, as was the case here.

Because of the impracticality of substituting the judgment of a court for that of the custodial parent, a court must employ some level of deference when evaluating lifestyle decisions affecting childrearing. The wisdom of this limitation on the court's purview is readily apparent. Deference to the custodial parent's decision to relocate

> would obviate *de novo* consideration of who is best suited to have custody, an issue which has already been resolved once by the courts. . . . Second, it would tend to maintain the child in the family unit to which he or she currently belongs, and minimize judicial interference with decisions which affect that family unit. . . . Finally, it places the decision with the person best able to consider the child's needs.

*Auge v. Auge*, 334 N.W.2d 393, 399 (Minn. 1983).

In other words, we cannot condone a process that substitutes the judgment of a court for that of the custodial parent merely because the court would have done something different if it had been the parent. At the time of divorce, mother was given the powers allocated by § 664(1), which included the right to decide where she would reside with the children. The place of residence for a family is central to childrearing, and thus that decision is understandably entrusted to the parent awarded parental rights and responsibilities. Mother's decision as to place

of residence was overruled because the court's judgment on that issue was entitled, under its view of the law, to more weight than hers. Mere disagreement, however, is not enough.

■ The court stated that mother had a warm and loving relationship with the children, and that the children wanted to and should remain with her. There were no allegations that she was unfit in any way, and the court's apprehension about the effect of the move on the children was equivocal:

> The children have not adjusted particularly well to their situation in Cabot . . . they are not rooted in the community. Leaving Cabot would not be detrimental to them, educationally or socially, and they are looking forward to a change. . . . While leaving Cabot would not be detrimental, a move to Iowa City would not necessarily be beneficial. While that city appears to have many positive features, it is likely that the children would have problems adjusting, given their present emotional problems, the lack of a support system, their mother's demanding schedule, and the completely new and unfamiliar community.

The focus of the court's concern was the effect of the relocation on the children's relationship with the father and the demands of law school on mother. The court preferred that she seek a law school education in a community closer to father and mandated that the school be within a four-hour drive. The court's findings simply identify the usual negative repercussions of any relocation, and its conclusion was an expression of a preference. The court may differ with the custodian as to the wisdom of a certain parental decision, but it may not lightly replace the judgment of the custodian with its own.

■ A change in lifestyle such as the one at issue here often triggers jurisdiction under the modification statute. The threshold determination, however, is not in and of itself sufficient to allow the court to second-guess the custodian in determining the appropriateness of that change. Respect for the decisions of the custodial parent serves to discourage state intervention. See *McComb v. Wambaugh*, 934 F.2d 474, 483 (3d Cir. 1991) ("absent compelling circumstances the state may not interfere with the parent-child relationship").

Concededly, custodial rights are not absolute, and standards applied by courts in other jurisdictions vary considerably and

depend largely on legislation. See, e.g., *Auge,* 334 N.W.2d at 399–400 (presumption favoring removal); *Holder v. Polanski,* 111 N.J. 344, 352–53, 544 A.2d 852, 856 (1988) ("any sincere, good-faith reason will suffice" for removal of children to another state by custodial parent). Father cites a number of cases in support of his argument that the trial court properly intervened in conditioning mother's continued custody upon her agreement to stay relatively close to Cabot, Vermont. Many of these cases, however, involve statutes unlike Vermont's, see, e.g., *In re Marriage of Kutinac,* 182 Ill. App. 3d 377, 382, 538 N.E.2d 862, 865 (1989) (statute placing burden to show good cause for removal on party seeking to relocate); *Dick v. Dick,* 147 Mich. App. 513, 516, 383 N.W.2d 240, 242 (1985) (anti-removal statute), or a divorce decree or stipulation expressly limiting removal, see, e.g., *In re Meier,* 286 Or. 437, 439, 595 P.2d 474, 475 (1979) (parties stipulated that custodial parent would not change residence without prior order of the court). Vermont has no statute requiring the custodian to make an affirmative showing of cause to justify removal and no statute discouraging relocation. Furthermore, no prior agreement on residence was reached in this case.

■■ Father's motion for modification did not include a request that the court disallow mother's relocation. The relief requested was a change in custody, or, in the alternative, a change in the visitation schedule and child support to accommodate the increased cost and travel burdens due to the move. The modification statute, 15 V.S.A. § 668, permits the court to change custody only when the best interests of the children require, and the burden of proof on the issue is on the moving party. *Hayes,* 144 Vt. at 335, 476 A.2d at 138. Here, the court sought to determine whether it was in the best interests of the children to move to Iowa and conditioned the mother's custody by imposing a restriction on where she may reside. The court thus focused on the wrong inquiry and fashioned an improper modification. The proper inquiry was for the court to determine the appropriate custodial parent in light of the change in circumstance—the move to a distant location. See *Jafari v. Jafari,* 204 Neb. 622, 624, 284 N.W.2d 554, 555 (1979) (where a custodial parent wishes to leave the jurisdiction for any legitimate reason, the move should be allowed "if the court finds it to be in

the best interests of the children to continue to live with that parent"). If the court concludes that the best interests of the children would be better served by continuing to live with the custodial parent in the new location rather than with the non-custodial parent in Vermont, the motion to modify must be denied. See *Weems v. Weems*, 548 So. 2d 108, 110 (La. Ct. App. 1989) (father seeking to amend custody order because of mother's move out of state must meet "heavy burden" that change in circumstances "is so deleterious to the child as to justify a modification"); *Armstrong v. Armstrong*, 601 S.W.2d 724, 725 (Tex. Civ. App. 1980) (father requesting change in custody in response to mother's move out of state with children must show that "'present [custody] would be injurious to the child's welfare, *and* the appointment of a new [custodian] would be a positive improvement for the child' ") (quoting *In re Marriage of Stockett*, 570 S.W.2d 151, 154 (Tex. Civ. App. 1978)).

██ ██ After dissolution of a marriage, a new family unit, consisting of the custodial parent and children, is created. Allowing the new family to flourish is in itself conducive to the best interests of the children involved. *D'Onofrio v. D'Onofrio*, 144 N.J. Super. 200, 206, 365 A.2d 27, 29–30 (1976) ("what is advantageous to th[e] unit as a whole, to each of its members individually and to the way they relate to each other and function together is obviously in the best interests of the children"). See also *Henry v. Henry*, 119 Mich. App. 319, 323, 326 N.W.2d 497, 499 (1982) (citing *D'Onofrio*). An appraisal of the custodian's decision to relocate should take into account both the family's needs in the short term and the family's benefit in the more distant future. See *Middlekauff v. Middlekauff*, 161 N.J. Super. 84, 94, 390 A.2d 1202, 1207 (1978) (wife's decision to relocate to continue graduate studies reviewed by analyzing totality of circumstances now and in the future).

██ Father argues that mother's move cannot be reconciled with Vermont's policy on parent-child contact as expressed by the Legislature in 15 V.S.A. § 650, which states that "after parents have . . . dissolved their marriage it is in the best interests of their minor child to have the opportunity for maximum continuing physical and emotional contact with both parents, unless direct physical harm or significant emotional harm to the child or parent is likely to result . . . ." This policy favors

the so-called "joint custody" arrangement. See Note, *A Critical Look at Vermont's New Child Custody Law, supra,* at 671. It does not supersede the custodial parent's reasonable decision to relocate. Furthermore, the breadth of inquiry for visitation is obviously narrower than for custody. "In contrast to custody cases, which demand a resolution of the question of which party is to have control over, and responsibility for, the upbringing of the child, visitation cases involve only the question of the maintenance of associational ties." Note, *Post-Divorce Visitation: A Study in the Deprivation of Rights,* 27 DePaul L. Rev. 113, 114 (1977). While the policy promoting visitation must be considered, concerns relating to it must not overshadow the proper role of the custodial parent. See *Sain v. Sain,* 426 So. 2d 853, 855 (Ala. Civ. App. 1983) ("disputes over visitation are not alone sufficient to necessitate change in custody . . . absent compelling reasons").

Visitation should function to foster beneficial relations between the children and the noncustodial parent, but visitation does not warrant nullification of the custodial parent's reasonable decisions. 15 V.S.A. § 650 does not promote visitation at all costs. See *Wells v. Wells,* 150 Vt. 1, 4–5, 549 A.2d 1039, 1042 (1988) (court abused discretion in changing custody "without considering whether the harm caused by plaintiff's obstruction of visitation outweighed the harm that could be caused by a change of custody"); *D'Onofrio,* 144 N.J. Super. at 206, 365 A.2d at 30 ("court should not insist that the advantages of the move be sacrificed and the opportunity for a better . . . life style for the mother and children be forfeited solely to maintain weekly visitation by the father where reasonable alternative visitation is available"); see also *Auge,* 334 N.W.2d at 398 (removal should not be disallowed solely to maintain the existing visitation patterns).

A change in custody involves a "violent dislocation." *Kilduff v. Willey,* 150 Vt. 552, 555, 554 A.2d 677, 680 (1988). The test for the family court in a case like this is straightforward. To prevail, the noncustodial parent must prove that the children's best interests would be so undermined by a relocation with the custodial parent that a transfer of custody is necessary. In this case, mother's expression of her ultimate choice to forgo educational plans in Iowa rather than lose custody was not a proper

basis for the order. By declaring her devotion to her children, she faced a "Sophie's choice" and lost that law school opportunity. Had the mother's move to Iowa—with or without the children—been inevitable, on this record the court may well have denied the request to transfer custody to father. We do not know for certain, however, what conclusion the court would have reached had the issue been properly framed.

## IV.

Finally, we dispose of father's claim that the children's representation by counsel on appeal was improper because the court appointed no guardian ad litem (GAL) for them at the trial level. The court appointed a lawyer to represent the children because mother's counsel indicated an intention to call one of the children as a witness. See 15 V.S.A. § 594(b) ("court shall appoint an attorney for a minor child before the minor child is called as a witness"). The expedited hearing schedule made it impossible to find a GAL in time, and there was no objection at trial to the lack of a GAL for the children. Father did not make a motion to dismiss the children's appeal, and even if we were to dismiss it, mother appealed also, raising the very issue that controls this case. Because father seeks no relief that we can identify—nor would any be practical in our view at this juncture—an answer to father's claim would be advisory, and we do not address it.

*Reversed and remanded for further proceedings consistent with this opinion.*