Lynn STEPHEN, now Martin, Appellant,

v.

Mark STEPHEN, Appellee.

No. 86560.

Supreme Court of Oklahoma.

April 22, 1997.

---

William D. (Bill) Graves, Oklahoma City, for Appellant.

Frank W. Davis, Guthrie, Michael P. Farris and David E. Gordon, Home School Legal Defense Association, Paeonian Springs, Virginia, for Amici Curiae, Home School Legal Defense Association, Oklahoma Central

Home Educators Consociation, Christian Home Educators Fellowship of Oklahoma.

Marcie James, Oklahoma City, for Appellee.

ALMA WILSON, Justice:

Lynn Stephen, now Martin, appellant, was granted an uncontested divorce from Mark Stephen, appellee, on March 29, 1989. Martin was granted custody of their two boys, born in August 1982, and June 1987. During the 1994–1995 school year Martin quit her job to educate the boys at home. In response, Stephen filed a motion to modify custody alleging that Martin was not qualified to serve as their teacher, and that a home-school education was not in their best interests. After a five-day hearing, the court concluded that the children were probably better off with Martin, but that she was not qualified to educate her children at home. The court ordered a change in custody from Martin to Stephen unless the children were placed in public school. Martin appealed, and her motion to retain was granted.

The dispositive issue is whether the evidence supports the trial court's determination that home schooling had a direct and adverse effect on the children. We find the evidence does not establish that Lynn Martin's home schooling of her two boys adversely affected their best interests. We hold that when the trial court found this home schooling was not in the best interest of the children, and ordered a change of custody unless the children were returned to public school, such change was against the clear weight of the evidence, and was an abuse of discretion. Accordingly, we reverse the order.

I. Procedural Issues

■ Before reaching the evidentiary issue, we address two preliminary issues: 1) whether the change of custody is an appealable order; and 2) whether the appellant has accepted the benefits of the order. The modification order appears to be conditional, rather than a final order. However, the conditional aspect of the judgment was removed after October 10, 1995, the time limitation for Martin to enroll the two boys in public school.[1] When an order embodies a conditional judgment and the conditional nature of the judgment has been removed by the passing of the time limits set by the trial court, the order is final and appealable.[2] Generally, a court of equity may render such judgment as will meet all the exigencies of the litigation and equitably settle all conflicting rights. In granting the necessary and proper relief the court may attach to such grant any reasonable conditions that to it seem proper.[3] In this case, whether the boys would continue to live in the familiar and suitable home provided by the mother was conditioned upon the mother's behavior, and the condition was intended to coerce the mother's behavior.[4] Early in the custody dispute, the mother heeded the trial court's warnings and re-enrolled her older son in public school. Having already placed the older child in public school, when the trial court pronounced its custody order, Martin advised the trial judge that she would comply by enrolling her younger son in public school. Coerced compliance with the conditions in the custody order is not tantamount to acceptance of the benefit of a judgment that

1. The order was not conditional at the time it was filed with the district court clerk on October 24, 1995, two weeks after October 10, 1995, nor when the petition in error was filed with the clerk of this Court on November 22, 1995.

2. *Sneed v. State ex rel. Dept. of Transp.*, 683 P.2d 525, 527–528 (Okla.1983). *See also Casker v. Dennis*, 208 Okla. 34, 252 P.2d 1027 (Okla.1952).

3. *Polk v. Unknown Trustees*, 298 P.2d 432, 436 (Okla.1956).

4. In pronouncing its decision, the trial court said: "The ties of the children are such that excluding the home education, mother is probably the better place to leave the children. I don't know that I have the authority to order mother not to home-educate these children because of the current law, but I do have the authority to tell her that if they are not placed in public school or private school or be educated by some other educator, other than herself, in addition to whatever she wants to give them herself, then I am going to move the children and it's just that simple. It's what I told you at the very beginning of this trial and my thoughts haven't changed since."

waives the right of appeal.[5]

## II. Changed Circumstances and Child's Best Interests

 Title 43 O.S.Supp.1994, § 112(A)(3) authorizes a trial court to modify a child custody order "whenever circumstances render such change proper...."[6] This language has remained unchanged since *Gibbons v. Gibbons.*[7] *Gibbons* held that parents requesting modification must establish (1) a permanent, substantial and material change in circumstances; (2) the change in circumstances must adversely affect the best interests of the child; and, (3) the temporal, moral and mental welfare of the child would be better off if custody is changed.[8] In a hearing upon a motion to modify, the burden is upon the applicant to show a substantial change in conditions since the entry of the last order or decree which bears directly upon the welfare and best interest of the child.[9] On appeal, a trial court order modifying child custody will be affirmed if the evidence supports a finding that the child is directly and adversely affected by the substantial change of circumstances.[10] Before the trial court, Mark Stephens took the position that Lynn Martin was not qualified to home school the boys because she had no formal education beyond high school, and therefore, the home schooling adversely affected the boys. The testimony and exhibits, however, do not support a finding that Lynn Martin's home schooling directly and adversely affected the best interests of her children.

The five days of hearings were spread from July 11, 1995, to October 6, 1995. The evidence shows that before Martin decided to start educating the boys at home, Stephen did not follow any pattern of regular visitation. Although he attempted to explain this, the proof was that until Stephen filed his motion to modify custody, visitation with his older son was sporadic, and visitation with his younger son was almost nonexistent. Stephen admitted on cross-examination that Martin was "a great mother," and that he filed his motion because he "didn't feel she was giving them a quality education in teaching them herself at home."

The trial court appointed its own expert for psychoeducational-psychological evaluation. Her tests revealed that the older boy was "bright to superior" in intelligence, and the younger boy "high average to bright." At the beginning of the 1994–1995 school year, both boys were behind a grade level for their ages. The older boy would have started the sixth grade and the younger boy would have started the first grade in the public school system. After one year of home schooling, the Iowa Tests of Basic Skills given in June of 1995, revealed that the older boy had earned a composite grade equivalent of 8.5, meaning that his test performance was approximately the same as that made by a typical student in the eighth grade at the end of the fifth month. As a comparison, at the end of his fifth grade year in public school, the Iowa Test of Basic Skills stated that his overall achievement was about average for his grade. The younger boy's composite score grade equivalent was 2.4, that is, second grade, fourth month. The report of the court's expert indicated that the

5. *Robert L. Wheeler, Inc. v. Scott,* 818 P.2d 475, 477 (Okla.1991). In *Stokes v. Stokes,* 738 P.2d 1346, 1347 (Okla.1987), we held that an appellant who cashed one of her alimony checks subsequent to the trial court's order awarding alimony did not waive her right to appeal that judgment. We reasoned that where the judgment accepted was necessary for the support and maintenance of the receiving spouse and minor children, it would be grossly unfair and against enlightened public policy to force the litigant to choose between food and the right to appeal. Likewise, Martin should not have to choose between the continued custody of her children and appeal.

6. Section 112 has been amended by 1996 Okla. Sess. Laws, ch. 131, § 10, eff. Jan. 1, 1997. The wording quoted above remains the same in the amended statute.

7. 442 P.2d 482, 484 (Okla.1968).

8. *Gibbons v. Gibbons,* 442 P.2d 482, 485 (Okla. 1968).

9. *David v. David,* 460 P.2d 116, 117 (Okla.1969).

10. *Fox v. Fox,* 904 P.2d 66, 69 (Okla.1995), citing *Gorham v. Gorham,* 692 P.2d 1375, 1378 (Okla. 1984); and *Rice v. Rice,* 603 P.2d 1125, 1128 (Okla.1979).

older boy was capable of achieving at the tenth grade level. The court's expert reported that the younger boy is achieving between second and third grade in all basic academic areas, which findings are consistent with the Iowa Test scores. The expert observed that the younger boy had made good academic progress even though his achievement is not at expectancy for his age and ability. The court's expert concluded that both boys could handle whatever decision the court made.

Dr. Raymond Moore, a witness for Martin, and whose doctorate was in teacher education and developmental psychology, was offered as an expert witness in home education, developmental psychology and teacher education. The court accepted him as an expert without an objection from Stephen's counsel. Dr. Moore described Martin as a very attentive, devoted and pensive mother. He concluded that she was doing an excellent job of teaching her boys. Although Dr. Moore preferred his home school program to the one being used by Martin because his program involved "study, work, and service," he observed that both boys were doing above the national norm based on the 1995 Iowa Test scores. Those tests were taken after the 1994–1995 year of home schooling. Dr. Moore observed that only in one or two areas were they below the national norm. He testified that on several of the skill levels, both boys had scored 100 percent correct. Although there were areas in which she could improve, Dr. Moore testified that the test results indicated that great credit must be given to Martin as a ·home schoolteacher. He observed that with proper coaching she could do very, very well. When asked if the mother would be disqualified as a home schoolteacher because she overlooked some misspelled words on spelling tests, Dr. Moore replied that the main concern of the mother was building character and ability to deal with life, so, putting first things first, the boys were really very well educated. They had manners, were industrious, and helped around the house. He concluded that she did an outstanding job that would not be done in any classroom.

Another of Martin's witnesses was Glenn Kastner, Director of Special Services for Put-nam City Public Schools. He had not met either of the boys, nor the parties until the day of the hearing. He evaluated the older boy's Iowa Tests. Kastner testified that the older boy had shown a dramatic growth in his reading ability and that he was ready for the seventh grade. At the time of the hearing, as noted above, the older boy was back in public school for the 1995–1996 school year, in the seventh grade. Kastner had checked with the boy's counselor and found that he had an A in science, a B in social studies, a B in English, and was enrolled in Honors Mathematics where he was maintaining a B. For the younger boy, Kastner did not have the benefit of being able to compare Iowa Tests taken before and after one year of home schooling, like Kastner did with the older boy. But Kastner testified that the younger boy's scores were all in the average to above-average range and that placing him in the second grade at Putnam City would not be a problem.

Lynn Martin testified that the course material she orders to teach her boys includes teacher's editions, children's manuals, tests and quizzes. She visits the library every two weeks to get additional reading material for both boys. She orders biographies of sports heroes who are her older son's favorites, and even a biography of Colin Powell that he enjoyed. The boys took art classes on Mondays and engaged in physical education classes on Tuesdays that included football, soccer, and baseball at Metropolitan Baptist. When asked what she would do if her older son asked her a question she could not answer, she replied that she would figure it out with him, but if they could not figure it out, and she was not able to teach a course, she would put him in a school where he could learn.

While the trial court finds in its order that Martin is not capable of educating her children properly because of her limited formal education, and cannot educate the children to a normal level, the standardized tests, tests of the court's expert, and testimony of the witnesses are all to the contrary. The only limitations the record supports is that the mother has a high school degree and overlooked some misspelled words and a gram-

matical error on some exhibits Stephen's attorney found in a stack of graded papers. But the Iowa Tests and the testimony of the experts reveal that both boys made substantial improvement in one year. So the trial court's conclusions are not supported by the record.

▪ Even if the trial court were correct in finding that Martin's education of the boys at home was not in their best interests, the court does not find that one deficiency outweighs all of the other circumstances and therefore requires that custody be moved to Stephen. There was substantial evidence presented that Stephen may be a problem drinker, occasionally drinks and drives, that he had to be taken to court once to collect past due child support, that he did not regularly visit the boys until after he filed his motion to change custody, that he did not keep his appointments when he did promise to visit them, that when he had them at his home in Tulsa for visitation he left them alone during the day and checked on them by phone. In contrast, Martin gave up a $50,000 a year job to stay home to give the boys a better education and more behavioral supervision than she believed that they were receiving in the public school system. She has had custody of the boys for eight years now. The trial court makes the formal education of the mother, and the overlooking of a few misspelled words outweigh the substantial negative evidence against custody being changed to the father. A change in custody, given these facts, is simply not supported. The trial court cannot presume that a parent possessing only a high school degree is unqualified to educate her children at home and make that the sole basis for a change in custody.[11] The trial court's personal beliefs should not be forced on a custodial parent who has made a legitimate decision for the benefit of the minor children. Finding that Martin, whose formal education is limited to a high school degree, is incapable of educating her children at home without evidence supporting such a finding is an abuse of discretion in light of the academic advances made by these boys as revealed by the court's expert, the Iowa tests, and the testimony of other witnesses. The trial court abused its discretion in finding that because of the mother's home schooling, a change in custody would be in the best interests of the children. The decision is against the clear weight of the evidence.

## III. Child Support

▪ Concerning Martin's motion to increase child support, the only evidence presented failed to prove that Stephen's income had increased. Martin's had actually decreased from $50,000 per year to no income. The evidence presented does not meet the burden of proof needed to modify a support decree. The child support computation filed with the divorce decree on March 31, 1989, reveals that Stephen's child support would have been $413.60 per month, and his part of the child care expense would have been $203.51 per month, for a total of $617.11 per month. By agreement, the child support was set at $500.00 per month. On February 7, 1990, the parties entered a second agreed order setting the child support at $350.00 per month to be paid to Martin by Stephen. Although the statutes provide child support may be based upon imputed income,[12] the loss of Martin's income resulting from her choice to educate her children at home makes decreasing child support unjust. We find that imputing an income of $50,000 per year to Martin is inequitable and an abuse of discretion. The court's decision reducing child support is reversed. The cause is remanded for the trial court to set a fair and equitable amount of child support. On remand the trial court should assess the financial impact of home schooling and apportion it equitably between parents.

---

11. We note that the legislature has recently amended 43 O.S. § 112(4) to provide regarding care and custody of children that "there shall be neither a legal preference or a presumption for or against private or public school or home-schooling in awarding the custody of a child, or in appointing a general guardian for the child."

1996 Okla. Sess. Laws, ch. 131, § 10, eff. Jan. 1, 1997.

12. 1995 Okla. Sess. Laws, ch. 1, § 13(B)(4), codified at 43 O.S. § 118(B)(4).

### IV. Attorney's Fees and Costs

■ Martin amended her petition in error appealing the award of attorney's fees in favor of Stephen. Title 43 O.S. § 110(C) & (D) provide that the court may require either party to pay reasonable expenses of the other as may be just and proper under the circumstances.[13] As this Court explained in *Thielenhaus v. Thielenhaus*,[14] the award of attorney's fees does not depend on which party prevails, but upon a judicial balancing of the equities. Regardless of the fact that Martin was imputed an income of $50,000 per year based upon past years, she gave up that income to educate her sons at home. The trial court awarded attorney's fees in the amount of $10,000 to Stephen, and additional sums of $63.50 for his costs and $650.00, which represents one-half of the fees of the court-appointed expert witness. The same reasoning that applied to our rejection of a decrease in child support applies here. We find that equity requires each party to pay their own attorney's fees and expenses for both trial and appellate expenses and one-half of the expense of the court-appointed expert. We so order.

### JUDGMENT OF THE TRIAL COURT IS REVERSED AND REMANDED.

KAUGER, C.J., and SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.

SUMMERS, V.C.J., and LAVENDER, J., concur in part, dissent in part.

SIMMS, Justice, concurring:

I agree with the majority that these facts do not support the trial court's determination that Ms. Martin is incapable of educating her children and that the trial court's decision requiring her to enroll her boys in public school under threat of losing of their custody, must be reversed. I would go further, however, and hold that the threshold for judicial interference in Ms. Martin's custody of her children was not reached by the noncustodial father's challenge to her choice of one lawful educational alternative over another, and that the entire scope of the inquiry into the

adequacy of her teaching was inappropriate for the trial court's consideration of change of custody.

It is not the business of the courts to become involved in everyday decisions of child rearing which are properly the prerogative of the parents or, in the case of divorced parents, the custodial parent. The right of the custodial parent to determine and control the education of the child is well-settled. In the absence of specific provisions in the divorce decree or an agreement between the parents, the sole decision making power over significant decisions affecting the child's welfare, including education, resides in the custodial parent. See *Annot., Noncustodial Parent's Rights As Respects Education of Child*, 36 A.L.R.3d 1093; *Bennett v. Bennett*, 73 So.2d 274 (Fla.1954); *Von Tersch v. Von Tersch*, 235 Neb. 263, 455 N.W.2d 130 (1990); *Jenks v. Jenks*, 385 S.W.2d 370 (Ct.App.Mo. 1964); *Rust v. Rust*, 864 S.W.2d 52 (Tenn.Ct. App.1993); *Griffin v. Griffin*, 699 P.2d 407 (Colo.1985); *Parrinelli v. Parrinelli*, 138 Misc.2d 49, 524 N.Y.S.2d 159 (Sup.Ct.Suffolk Co.1986).

The essence of the custody which the court awarded to Ms. Martin at the time of her divorce is the right to companionship of her children and the right to make fundamental decisions regarding their care, control, education, health and religious training. 10 O.S. 1991, § 4; 43 O.S.1991, § 112; *Matter of Adoption of Darren Todd H.*, 615 P.2d 287 (Okl.1980). It is a matter of unquestioned constitutional principle that in the absence of jeopardy to the health and safety of children, the government may not interfere with fundamental parental rights and interests in directing education and the religious upbringing of their children. *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). The rights and obligations of custody are extensive and operate against third parties, including the noncustodial parent, as well as against the state. In

---

**13.** 1992 Okla. Sess. Laws, ch. 252, § 1(C) & (D).

**14.** 890 P.2d 925, 934–935 (Okla.1995).

the absence of exceptional facts, decisions made by the custodian regarding a child's education cannot be grounds for the modification of custody.

The legislature is the proper body to provide standards for the education of children. In its wisdom, our legislature has enacted statutory protection of the right to home educate children, [70 O.S.1991 § 10–105(B); 70 O.S.1991, § 10–109(A) ], but has not seen fit to enact minimum standards for teachers or curriculum. We cannot do so in its stead. Home schooling is a lawful educational alternative available to Ms. Martin and in the absence of the most unusual conditions, which were not shown to be present here, it was not within the power of the trial court to pass on the quality of education they were receiving or dictate the type of education it felt best suited to her children. These educational decisions are placed by law with her and with her alone.

The trial court erred in considering and determining custodial imperatives under the guise of ordinary schooling complaints. The evidence fell far short of showing that Ms. Martin's instruction of her boys was a substantial change of circumstances which directly and adversely affected them in any material way or posed a serious threat to their health, safety or welfare. *Gibbons v. Gibbons*, 442 P.2d 482 (Okl.1968).

In *Jenks v. Jenks*, 385 S.W.2d 370, 376 (Mo.App.1964), the court stressed that courts should not specify in a divorce decree nor afterwards by modification prescribe the manner of the performance of duties of the parent awarded custody so as to abridge that custodial discretion, and in fact, once custody has been awarded no further decision should be required of the court except to prevent abuse of the child or neglect of his essential interests. The court refused to direct a specific school which the child of divorced parents should attend although the agreement between the parents was unenforceable and, on that point, the court stated:

"... Courts are not so constituted as to be able to regulate the details of a child's upbringing. It exhausts the imagination to speculate on the difficulties to which they would subject themselves were they to enter the home or the school or the playground and undertake to exercise on all occasions the authority which one party or the other would be bound to ascribe to them. Considerations of the most practical kind, therefore, dictate that in these cases the duty of attending to the details of the child's rearing be delegated to a custodian, and, as an indispensable concomitant of the appointment, that the custodian be vested not only with commensurate authority but with that degree of discretion upon which the expeditious exercise of authority invariably depends. It must be presumed in the absence of a contrary showing that the custodian, whether he be the child's parent or a stranger, will discharge his duties with fidelity and good judgment ..."

Facing facts very similar to those of the instant case, the court in *Rust v. Rust*, 864 S.W.2d 52 (Tenn.Ct.App.1993) reversed the trial court's decision sustaining the noncustodial father's objections to the mother's decision to home school one of their children. The court held the threshold for judicial interference with the custodial mother's decision to home school one of her children was not met merely by the noncustodial father's objections and the trial court's determination that the mother's decision was not in the child's best interests. The court recognized that the parent awarded legal custody has the right to make the decisions regarding the child's education and stressed that the new family unit created by the divorce custody order, a single-parent family, has the same fundamental right to child rearing autonomy and freedom from unwarranted governmental interference as is accorded an intact two-parent family: the right to raise children as they see fit. The court cautioned that courts should exercise the same restraint from interfering with a custodial parent's decision regarding a child's education as would be shown to a decision made jointly by divorced parents or by married parents. Courts, it was held, should not second guess a custodial parent's decisions concerning a child's education when those decisions are consistent with state law and should not countermand those decisions unless they are contrary to

an existing custody order, impose increased, involuntary burdens on the noncustodial parent, are illegal, or will affirmatively harm the child. See also *Lane v. Schenck,* 158 Vt. 489, 614 A.2d 786 (1992) (New family unit entitled to deference in considering choice to relocate).

Because home schooling is a permissible lawful educational alternative in this state and the noncustodial father did not present sufficient proof to warrant the trial court's interference with the mother's decision as sole legal custodian of the children to educate them at home over the father's objections, the trial court should not have interfered with her decision. The mother was unquestionably a fit parent and a good custodian and there was no showing that her teaching was illegal or affirmatively harmful to the children.

It is not difficult to see that we will be embarking on a perilous course if we decide to consider and pass on questions concerning the quality of educational choices in motions to modify custody. In addition to weighing arguments concerning home schools vs. traditional schools, we will be opening the floodgates for uncountable and never-ending post divorce challenges regarding the relative merits of all aspects of education: one teacher vs. another, one school system vs. another, one school vs. another, one curriculum vs. another, etc. These are not decisions our courts are competent to make and we should strenuously avoid the temptation to become education analysts.

I am authorized to state that Justice WILSON approves of the views expressed in this concurring opinion. I am also authorized to state that Chief Justice KAUGER, Justice OPALA, and Justice WATT Concur in this separate opinion.

SUMMERS, Vice Chief Justice,
concurring in part and dissenting in part,
with whom LAVENDER, J. joins.

The trial court found that the custodial mother's decision to home-school the children herself, in light of the testimony presented, would amount to a material change of circumstances adverse to the best interests of the children, justifying a change of custody

unless the mother accepted certain conditions. The issue before us (on the custody question) is whether the trial court should be reversed for doing so. By what standards do we review the trial judge's work?

There are cases in which this Court has said we will not reverse a custody decision where it does not appear that the lower court "abused its discretion". *Gorham v. Gorham,* 692 P.2d 1375, 1380 (Okla.1984); *Roemer v. Roemer,* 373 P.2d 55, 57 (Okla.1962). There are other custody cases where the Court used the traditional equity-based standard, that the findings and decree cannot be disturbed on appeal unless found to be "against the clear weight of the evidence." *Kahre v. Kahre,* 916 P.2d 1355, 1360 (Okl.1995); *Carpenter v. Carpenter,* 645 P.2d 476, 480 (Okla. 1982); *Snow v. Winn,* 607 P.2d 678, 681 (Okla.1980). There is a recent case, *Mueggenborg v. Walling,* 836 P.2d 112, 115 (Okla. 1992), in which we found "no abuse of discretion" in granting custody because the decision "is not against the clear weight of the evidence."

There is, however, no disagreement that divorce litigation, and custody contests within it, are matters of equitable cognizance. This was thoroughly laid out in *Carpenter, supra,* at 480. I counsel, therefore, that in child custody matters we stay with the traditional norm used in other matters of equity jurisprudence—that custody findings and decrees not be disturbed unless found to be against the clear weight of the evidence.

Having said that, what would I do with this custody judgment on appeal? I would affirm it.

Contrary to the mother's assertion at trial, the trial court was not sitting in judgment with regard to the wisdom of home schooling. The trial judge stated on numerous occasions that he had no personal dislike of home schooling, and that he saw his role only as the defender of the best interests of the children. He repeatedly pointed out that the only question was whether, in this particular case, it was in the best interests of the children to be educated by their mother. The father of the children felt it was not.

At trial the mother admitted that she had on numerous occasions graded the children's papers incorrectly. She did not give the children periodic grade cards. Only in anticipation of litigation did she complete the only grade reports the children received while being home schooled. She frequently failed to correct misspelled words on their papers. She testified that she did not go beyond algebra or geometry in school, and that she had a grade point average of about 2.85. She had a D in high school biology, the highest science course she took. She testified that she did not tell the children when they progressed to the next grade.

A home schooling expert testified on behalf of the mother. While he advocated home schooling and thought that the mother was doing a good job, he agreed that it was harmful to the children's education to have papers and tests graded incorrectly. He also agreed that the mother used the worst home schooling program available. He concluded that the mother needed improvement as a teacher. While he thought it was possible that she might improve, he advocated the use of a different program (his own), as well as tutors in areas where the mother was weak. In his opinion the children were being educated, but could do much better.

There is some dispute as to whether the children actually progressed under the tutelage of their mother. A court-appointed expert tested the children, determined that each had a high I.Q., and that the older was capable of learning several grades beyond his actual age. In her opinion the children were not learning at a rate commensurate with their abilities. She also pointed out that the children had actually declined after being home schooled in areas such as reading, language and science. Test scores showed that the oldest child was extremely advanced in mathematics, and could learn at the tenth grade level.

The father testified that he filed the modification motion because he does not feel it is in the best interest of his children to be educated by the mother. He did not question the mother's fitness as a custodial parent. He realized that the children are extremely bright and is concerned for their academic well-being. Particularly, he was concerned about the mothers's lack of knowledge in mathematics, and the older boy's high aptitude in that area.

If the parent seeking modification of custody can show that there has been a substantial change which is affecting the moral, temporal or mental welfare of the children, custody may be changed. *Fox v. Fox,* 904 P.2d 66, 69 (Okla.1995). Clearly, there was evidence to support the trial court's ruling. The record shows that the children were bright, but were being slowed by the teacher. In fact, there are test results which show regression instead of progression. Even the mother's expert felt she could use improvement. The court concluded that the educational well-being of the children was in jeopardy.

In making his ruling, the judge attempted to tailor the judgment to fit the best interests of the children. He did not prohibit the children from being home schooled; rather, he determined that it was in their best interests to be schooled by someone capable of teaching them at the appropriate level, whether it be at home, in public school, or in private school. I do not find his ruling contrary to the clear weight of the evidence.

For these reasons I would affirm the trial court's judgment as to custody. I have no disagreement with the Court's opinion otherwise.