OPINION OF THE COURT
Denis R. Hurley, J.
Defendant moves for an order restraining the plaintiff from removing their daughter, Kristine Parrinelli, born February 1, 1979, from the private elementary school that she presently attends to a public elementary school. For the reasons hereinafter indicated, the defendant’s application is denied.
On August 22, 1986, the parties entered into a stipulation of settlement which provided in article VIII-D as follows: "The parties shall consult with each other with respect to the child’s education, illnesses and operations (except in emergencies), health, welfare and other matters of similar importance *50 affecting the child whose well-being, education and development shall be at all times the paramount consideration of the Father and Mother.”
Thereafter, on June 17, 1987, the parties were divorced. While no permanent direction was made in the divorce decree as to the custody of Kristine, the decree did provide that the existing schedule of custody and visitation previously ordered by a Judge of this court (Geiler, J.; Oct. 21, 1983) was to continue until a hearing on permanent custody was held. The October 21, 1983 order, in pertinent part, provided as follows: "That temporary custody of the child Kristine Parrinelli will be with the plaintiff-respondent, Patricia Parrinelli.”
Although defendant was granted extensive visitation, the plaintiff mother is clearly the custodial parent at this juncture.
Kristine is a third grade student at Harbor Country Day School, a small private school located in St. James, New York. She has attended that school since kindergarten. Her class is quite small (10 students), and she is performing well.
During this past summer, defendant discovered through a conversation with his daughter that the plaintiff was in the process of withdrawing the child from Harbor Country Day School and enrolling her in the St. James Elementary School system. This was being done without defendant’s knowledge or consent, and in violation of the above provision of the parties’ agreement. Attempts to resolve the problem amicably failed, and the instant motion was made.
The law in New York is well settled that in disputes involving children, the court is bound to make its determination based solely upon what is in the "best interests of the children.” (Matter of Lincoln v Lincoln, 24 NY2d 270; Finlay v Finlay, 240 NY 429; see also, Friederwitzer v Friederwitzer, 55 NY2d 89 [1982].) However, the initial posture of the courts should be one of noninterference as to decisions involving a child’s upbringing within his home, whether the subject matter be religion, health care or, as in the present case, education. (See, Spring v Glawon, 89 AD2d 980 [2d Dept 1982]; Siegel v Siegel, 122 Misc 2d 932 [Sup Ct, Nassau County 1984]; but see, Altman v Altman, NYLJ, Sept. 8, 1983, at 13, col 4 [Sup Ct, Westchester County, Delaney, J.].) Granted, a court will enforce a prior agreement of the parties, assuming the action called for is not inconsistent with the child’s best interest. But absent an agreement, the custodial parent is the *51 proper party to make such decisions. (Stevenot v Stevenot, 133 AD2d 820 [2d Dept 1987]; Siegel v Siegel, supra.)
Turning now to the clause sought to be enforced, the court holds that the agreement of the parents to jointly select a school for their child is unenforceable. It is axiomatic that if an essential element of a stipulation is reserved for the future agreement of both parties, the promise can give rise to no legal obligation absent such future agreement (1 Williston, Contracts § 45, at 149-152 [Jaeger 3d ed 1963]; see also, 1 Corbin, Contracts § 95, at 397 [1963]; Restatement [Second] of Contracts § 33 [1981].) Here, the agreement neither selected a school nor provided a means of resolving deadlocks over school selection. In essence, the parties merely "agreed to agree,” to negotiate and reach agreement at some future time concerning their child’s education. Agreements of this sort are unenforceable because the court has no power to force the parties to reach agreement, and cannot grant a remedy (Griffin v Griffin, 699 P2d 407 [Colo 1985]; Jenks v Jenks, 385 SW2d 370 [Mo 1964]). Such clauses in separation agreements and stipulations, while laudibly designed to promote input from noncustodial parents on important matters affecting their children, are essentially valueless should the parties fail to agree.* With respect to the present case, the absence of an enforceable agreement as to Kristine’s education means that the choice rests with the plaintiff mother as the custodial parent.
In conclusion, and to partially reiterate, the court system is ill equipped to serve as a surrogate parent in cases such as this, and make the everyday decisions which affect a child’s welfare, such as whether he should go to camp, and if so, which one; what sports, or other extracurricular activities, should he engage in, if any; should he begin dating at 15 or 17 years of age, and indeed, and of a more substantial nature, what church or school should he attend. Notwithstanding the fact that we are becoming an increasingly litigious society, such decisions still must be made by the parents, not the State, through its courts. If the parties have entered into an enforceable agreement beforehand, a court will hold them to it. But absent such agreement, the custodial parent makes the choice. Should the decision made, or series of such decisions, *52 suggest that the best interests of the child would be served by change in custody, the noncustodial parent may make the appropriate application.
For the reasons stated above, the instant motion is denied and the temporary restraining order presently in effect is vacated.

 See Lindey, Separation Agreements and Ante-Nuptial Contracts, form 14.05, at 14-7 — 14-8 (Bender & Co.); and Schlissel, Separation Agreements and Marital Contracts §§ 13.05, 13.07 and 13.08.