06-3231-cv
Briggs Ave. v. Ins. Corp. of Hannover

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

Argued: November 15, 2007
Question certified to the New York Court of Appeals: February 15, 2008

Docket No. 06-3231-cv

_____

BRIGGS AVENUE L.L.C.,

*Plaintiff-Appellant*,

v.

INSURANCE CORPORATION OF HANNOVER,

*Defendant-Appellee*.

_____

Before: LEVAL, CALABRESI, and WESLEY, *Circuit Judges*.

_____

ROBERT SCHER, Scher & Scher, PC, Great Neck, N.Y., *for Plaintiff-Appellant*.

JANET FORD, White, Fleischner & Fino, LLP, New York, N.Y., *for Defendant-Appellee*.

_____

CALABRESI, *Circuit Judge*:

This case raises a question of state law that has yet to be addressed by the New York Court of Appeals and that has led to divergent opinions in the federal district courts. When an injured party begins its suit against an insured by serving process on the Secretary of State, who, under New York corporate and limited liability company law, is the insured's agent for such service, does this service suffice to trigger the provisions in the relevant insurance policy that require the insured to inform its insurer in a timely manner that a suit has been brought, where: (a) the insurance policy does not expressly refer to notice that a suit has been brought being given to an insured's "representative" rather than the insured itself, and (b) the insured plausibly argues that – due to its failure to update its address with the Secretary of State – it had not received actual notice that the suit had been brought? Because we believe that the New York Court of Appeals should be given the opportunity to decide whether it wishes to address this technical but recurring question of New York state law, we CERTIFY the question to the New York Court of Appeals.

## BACKGROUND

Plaintiff-Appellant Briggs Avenue LLC ("Briggs" or "Appellant") filed an action in New York State Supreme Court seeking a declaratory judgment that its insurer, Insurance Corporation of Hannover ("ICH" or "Appellee"), be required to defend and indemnify Briggs in a personal

injury lawsuit filed by one of Briggs's tenants against Briggs. ICH removed the suit, pursuant to 28 U.S.C. § 1441, to federal district court in the Southern District of New York.[1]

At the district court, ICH moved for judgment on the pleadings and/or summary judgment on the ground that Briggs failed to comply with various notice requirements contained in its insurance policy. Briggs cross-moved for summary judgment. The district court granted ICH's motion, denied Briggs's cross-motion, and dismissed the case with prejudice. *Briggs Ave. L.L.C. v. Ins. Corp. of Hannover*, No. 05 Civ. 4212, 2006 WL 1517606 (S.D.N.Y. May 30, 2006). Briggs appeals that decision.

*A. The Underlying Tort Lawsuit*

Briggs owns and operates an apartment house at 2570 Briggs Avenue in the Bronx. On or about May 14, 2003, Shaban Mehaj, the sole principal of Briggs, was informed of an incident at this apartment house. A portion of the ceiling in one of the apartments had fallen. Mehaj visited the apartment shortly thereafter, and asserts in his affidavit that he "was not informed that anyone in the apartment had been injured in the incident and had no reason to suspect so." Mehaj did not notify Briggs's insurer, ICH, because, at this point, he assertedly "had no knowledge or notice that anyone had been injured."

Later, on or about July 28, 2003, Nelson Bonilla, an adult son of one of the tenants at 2570 Briggs Avenue, filed a personal injury action against Briggs, alleging that on May 14, 2003, he was injured when a piece of the ceiling fell and struck him, and that the accident was caused by Briggs's negligence in maintaining the premises. The lawsuit sought $2 million in

---

[1] ICH is an Illinois corporation. Briggs is a New York limited liability company.

damages. A week or so earlier, Bonilla had served his personal injury complaint on the Secretary of State of New York, who under New York law functions as Briggs's agent for service. N.Y. Ltd. Liab. Co. L. § 203(e)(4). The Secretary of State forwarded copies of the complaint to the address for Briggs then on file at the Secretary's office. That address was, however, incorrect as Briggs had failed to advise the Secretary of State of its new mailing address. Briggs asserts that, because of the wrong address, it did not receive word of Bonilla's suit.

In state court, Bonilla moved for default judgment against Briggs and, in late March or early April 2004, directly served Briggs at its correct address. Briggs received the notice and "within days" informed its insurance broker of the lawsuit. Shortly thereafter, ICH received, through the insurance broker, an Accord General Liability Notice of Occurrence/Claim form, dated April 2, 2004.

*B. The Briggs Insurance Policy and Affirmative Defenses Claimed by ICH*

Briggs's insurance policy, issued by ICH, provided coverage for the period of September 20, 2002 to September 20, 2003, and thus was in place at the time of the ceiling incident. The policy included a section entitled "Commercial General Liability Conditions" which articulated notice requirements that the insured needed to comply with, in the event of an occurrence, offense, claim or suit. The policy stated:

> 2. Duties in the Event of Occurrence, Offense, Claim or Suit
>> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. . . .

b. If a claim is made or "suit" is brought against any insured, you must:
>> (1) Immediately record the specifics of the claim or "suit" and the date received; and
>> (2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:
>> (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" . . . .

ICH, after receiving the notification of Bonilla's lawsuit, replied to Briggs in a disclaimer letter dated April 12, 2004, claiming affirmative defenses and indemnity due to Briggs's failure to comply with the policy notification conditions. The relevant portion of the letter explains that "despite the service on the Secretary of State in July of 2003, Briggs Ave LLC first notified Insurance Corporation of Hannover of the occurrence, claim or suit and first provided copies of the summons and legal papers by cover letter dated April 2, 2004."

In summary, ICH argues that Briggs is not entitled to insurance coverage because Briggs failed to inform ICH of the ceiling incident or the Bonilla lawsuit until eleven months after the incident, and eight months after the filing of the lawsuit, thus violating the conditions in the insurance policy requiring (1) notice to ICH "as soon as practicable of an 'occurrence' or an offense which may result in a claim," (2) notice to ICH "as soon as practicable" of a lawsuit filed against Briggs, and (3) that Briggs "[i]mmediately" send to ICH any papers received in connection with a lawsuit. In response, Briggs argues that ICH has waived certain of these arguments by failing to mention them specifically in its April 12, 2004 letter disclaiming coverage, and further contends that none of the relevant conditions was violated by Briggs.

The district court, in addressing the cross-motions for summary judgment, found that there were outstanding issues of fact regarding whether or not Briggs violated its duty to inform ICH of the *occurrence* – the falling of the ceiling in May 2003. It noted, however, that ICH could nonetheless prevail on summary judgment if it were able to demonstrate that, as a matter of law, Briggs violated its duty to notify ICH as soon as practicable of the Bonilla *lawsuit*. This ICH did to the district court's satisfaction, by citing a short (one paragraph), but clear, decision of the New York Appellate Division for the First Department. *26 Warren Corp. v. Aetna Cas. & Sur. Co.*, 676 N.Y.S.2d 173, 174 (App. Div. 1998). Other federal district courts, facing similar factual circumstances, have chosen to distinguish *26 Warren Corp.* and have come out the opposite way. *See 105 St. Assocs., LLC v. Greenwich Ins. Co.*, 507 F. Supp. 2d 377, 381 (S.D.N.Y. 2007); *Nouveau Elevator Indus., Inc. v. Cont'l Cas. Ins. Co.*, No. 05 Civ. 0813, 2006 WL 1720429, at *6 (E.D.N.Y. Jun. 21, 2006). For the reasons that follow, we believe that the New York Court of Appeals should be given the opportunity – if it wishes – to address the Appellate Division decision and the underlying issues of public policy that opinion raises.

## DISCUSSION

The law of New York and Second Circuit Local Rule § 0.27 permit us to certify to New York's highest court "determinative questions of New York law [that] are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists." 22 N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a) (2008). We have certified questions to the Court of Appeals "where state law is not clear and state courts have had little opportunity to interpret it." *State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 505 (2d Cir. 2004). In *Unigard Security*

6

*Insurance Company, Incorporated v. North River Insurance Company*, 949 F.2d 630, 631-32 (2d Cir. 1991), we particularly noted the problems that arise when an issue of state law, recurring in federal cases, leads to a split of authority within or between federal districts. There, as here, the Southern District of New York was split on a question relating to the interpretation of New York state law,[2] with only a single decision of a lower New York state court as guidance. *Id.*

The certification process provides us with a "valuable device for securing prompt and authoritative resolution" of questions of state law. *Ex rel. Kidney v. Kolmar Labs., Inc.*, 808 F.2d 955, 957 (2d Cir. 1987). And often when we certify we express no view as to the merits of the issue at hand. *See, e.g.*, *Rivkin v. Century 21 Teran Realty LLC*, 494 F.3d 99, 108 (2d Cir. 2007); *O'Mara v. Town of Wappinger*, 485 F.3d 693, 697-99 (2d Cir. 2007); *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 288 (2d Cir. 2006). There are, however, cases where it is desirable that, in outlining the question to be certified to the Court of Appeals, we also address how, were certification denied, we would resolve the issue.[3] By doing this, we facilitate the Court of Appeals's decision as to whether or not to *accept* certification. *See* 22

[2] New York law does not permit questions to be certified to the Court of Appeals from district courts, thus the divergent interpretations of the holding in *26 Warren Corp.* could not have been resolved at the district court level.

[3] We would usually base our proposed resolution on available New York sources of law. In their absence, or particular dubiety, we look to the relevant law of other states as well. This capacity, together with certification, goes a long way toward avoiding the dangers of which our late distinguished colleague, Charles E. Clark, warned shortly after the decision in *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938). A decade before the certification procedure was created, he wrote that "instances [] where the federal court feels it cannot really re-examine state law beyond the wooden limits set by a single precedent [] lead, I submit, in reality to a falsification of the state law by erecting a single instance into a general principle to the point where, in all likelihood, the state court eventually would refuse to go." Charles E. Clark, *State Law in the Federal Courts: The Brooding Omnipresence of* Erie v. Tompkins, 55 Yale L J. 267, 293 (1946).

N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(d) (2008). We therefore make clear that while we invite New York's highest court to speak to an issue, we in no way impose on it to do so should it prefer, in its discretion, to withhold judgment. We place ourselves, in other words, in a position similar to that of the New York Appellate Divisions, whose view of the merits in a particular case may, but need not, be reviewed by the New York Court of Appeals.

When we express our view of the merits, we create the following situation. The New York Court of Appeals can opt to grant certification. If it does, *it* will resolve the state law issue as it sees fit, which as New York's highest court, only it can ultimately do. If, however, the Court of Appeals does not wish to speak to the subject, it can decline certification with a fuller knowledge of what that refusal will mean in that particular case. In the event of such a refusal, our interpretation of New York law would stand, and quite properly so. We would, in effect, have been authorized "to impose our view of state law, provisionally, [and] until the highest court of the state decides to resolve the question." Guido Calabresi, *Federal and State Courts: Restoring a Workable Balance*, 78 N.Y.U. L. Rev. 1293, 1302 (2003).

It is this approach to certification that we employ in the case before us.

*A. New York Law and Our Analysis*

ICH argues (1) that the notice that Briggs received, when Bonilla served its agent in law, the Secretary of State, with his complaint, should suffice to trigger the notification requirement of the insurance policy, and (2) that an eight-month delay was, as a matter of law, untimely notification under the policy. Briggs responds by claiming that its insurance policy requires *actual* rather than constructive notice and, hence, that the service on the Secretary of State,

without evidence of actual notice to Briggs, did not obligate Briggs to inform ICH "as soon as practicable" of the suit.[4]

In support of its position, ICH relies on a First Department case, *26 Warren Corp.*, 676 N.Y.S.2d at 174, which held, in a similar situation, that the defendant insurer was not obligated to defend or indemnify the insured, because:

> [t]he subject insurance policy's notice of claim condition precedent to coverage, that "the insured shall immediately forward to [the insurer] every demand, notice, summons or other process received by him *or his representative*," is devoid of ambiguity, and the receipt of service of the summons and complaint by the Secretary of State, as plaintiff's designated agent, constituted receipt by a representative within the meaning of the policy. The fact that plaintiff itself did not actually receive a copy, due solely to its own failure to notify the Secretary of State of a change in address of its representative to whom the Secretary was authorized to forward process, does not excuse its noncompliance with the notice requirement of the policy.

*Id.* (citations omitted) (second alteration in original) (emphasis added) .

Briggs asserts, in response, that it did comply with the policy provisions, as it only became "practicable" for Briggs to notify ICH when Briggs actually "became aware that the lawsuit had been commenced." Brief of Plaintiff-Appellant at 20. In distinguishing *26 Warren Corp.*, Briggs argues that because *its* policy (unlike that in *26 Warren Corp.*) did not include the words "process received by him *or his representative*" (emphasis added), the policy intended that only *actual* notice would trigger the notification requirement.[5]

_____

[4] The district court analyzed the case in a somewhat different way. It took for granted that the notice to the Secretary of State triggered the requirement, and focused on whether Briggs's failure to update its address with the Secretary of State was an "excuse" for the delay. The district court found no excuse as a matter of law.

[5] Briggs also attempts to distinguish *26 Warren Corp.* on the ground that the *Warren* policy required that notice be given "immediately" rather than "as soon as practicable." But this

9

Recent case law in the federal district courts lends some support to Briggs's effort to distinguish *26 Warren Corp.* Addressing policies that mirror Briggs's, in circumstances where, like Briggs, the insured had failed to update its address with the Secretary of State, two district courts have found that it was the "or his representative" language in the *26 Warren Corp.* policy that served as the "term by which receipt by the Secretary of State triggered the duty to notify the insurance company." *Nouveau Elevator Indus., Inc. v. Cont'l Cas. Ins. Co.*, No. 05 Civ. 0813, 2006 WL 1720429, at *6 (E.D.N.Y. Jun. 21, 2006). *See also 105 St. Assocs., LLC v. Greenwich Ins. Co.*, 507 F. Supp. 2d 377, 382 (S.D.N.Y. 2007) (finding, in similar circumstances, that the date on which the insured claimed to have received actual notice of the suit was "the appropriate starting point from which to judge the reasonableness of its delay in notifying" the insurer).

On the other hand, two district courts – the court below and one other – have found *26 Warren Corp.* applicable, even in situations where the underlying language did not include the "or his representative" language. *See Briggs*, No. 05 Civ. 4212, 2006 WL 1517606 at *5-6; *U.S. Underwriters Ins. Co. v. 203-211 West 145th St. Realty Corp.*, No. 99 Civ. 8880, 2001 WL 604060, at *7 (S.D.N.Y. May 31, 2001) (noting relevance of *26 Warren Corp.* to a policy similar to the one before us, though finding a triable issue of fact on whether the insured was properly registered with the Secretary of State), *vacated on other grounds*, 37 Fed. App'x 575 (2d Cir. 2002).

---

argument adds nothing to the previous one made by Briggs. For, if the notification duty was triggered by service on the Secretary of State, then, as a matter of law, the notification Briggs gave was not provided "as soon as practicable."

Were the issue up to us, we would agree with these latter district courts. Given the rule in *26 Warren Corp.*,[6] we do not believe that the presence of words like "or his representative" can be determinative. And we would reject the notion that such a phrase is necessary for service on the Secretary of State to trigger the notification requirement. We therefore invite the New York Court of Appeals to speak to this issue, should it choose to do so.

*B. Other Factors Favoring Certification*

We have embraced certification where a question of state law raises important issues of public policy. *See, e.g.*, *Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d 41, 47 (2d Cir. 2001). We believe certification is warranted here not simply because of the recurrence of this seemingly narrow question (we have cited four cases that have been decided by the federal district courts in the last five or so years), but also because the issue of when a notification requirement is triggered implicates broader questions of insurance law and public policy. Should the Court of Appeals choose to take this case, it would, if it wished, have the opportunity to speak to the proper balance among the differing interests at stake.

New York, as the Court of Appeals has itself recognized, is one of increasingly few states that allow an insurer to disclaim based on a failure by an insured to inform the insurer in a timely fashion of the initiation of a suit, even if the insurer was not prejudiced by the delay in notification. *See In re Brandon*, 97 N.Y.2d 491, 496 (2002). The Court of Appeals has declined to abandon, or even to reduce, the New York no-prejudice rule. At the same time, it has been

[6] Should the Court of Appeals choose to accept certification, that court is not restricted to the specific question we have presented, and may, of course, review the Appellate Division's decision in *26 Warren Corp.* itself.

11

unwilling to extend that rule. *Id.* at 493 (refusing to extend no-prejudice rule where an insured failed timely to submit summons and complaint in context of supplementary uninsured motorist coverage). *See also Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 79 N.Y.2d 576, 582 (1992) (refusing to apply presumption of prejudice in late notice dispute in reinsurance context). The severity of the no-prejudice rule has been tempered, moreover, by the seemingly heavy burdens that New York places on insurers in related contexts, for example, New York's reading of insurers' disclaimers very narrowly, and its requirement that insurers who do disclaim do so with great specificity. *See, e.g.*, *Gen. Accident Ins. Group v. Cirucci*, 46 N.Y.2d 862, 864 (1979). These are, of course, in addition to the common rules favoring coverage and interpreting ambiguous terms in an insurance policy strictly against the insurer. *See, e.g.*, *U.S. Fidelity & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 232 (1986).

A rule that makes notice served on the Secretary of State the equivalent of notice served on the insured penalizes those insureds who fail to update their addresses with the Secretary of State. Such a rule reinforces appropriate norms of corporate behavior, providing, as the district court said, "greater incentive for businesses to familiarize themselves with the law's requirements." *Briggs*, No. 05 Civ. 4212, 2006 WL 1517606, at *7. Yet, as the court below also stated, the result may well be "harsh", *id.*, particularly for a small business owner who fails, through ignorance, to update his address. If the rule deems service on the Secretary of State in all cases to furnish actual notice to the insured, it may be harsher yet in the rare case in which the Secretary of State, through no fault of the insured, fails to give notice to it. *Cf. Micarelli v. Regal Apparel, Ltd.*, 381 N.Y.S.2d 511, 512 (App. Div. 1976). *But cf. Hilldun Corp. v. Scarboro Textiles, Inc.*, 422 N.Y.S.2d 417, 417 (App. Div. 1979). We do not know, or presume to

12

suppose, whether in the total contours of insurance law in New York, the New York Court of Appeals would agree that the result is harsh, and choose to temper it, or whether it would instead find the rule not to be harsh at all, but only justly merited.

We think these questions, and the delicate calibrations they require in response, are best considered by the New York Court of Appeals. We therefore indicate what, in the absence of guidance by that distinguished court, we believe to represent New York law today, and, by certification, offer the New York Court of Appeals the opportunity to guide us, should it opt to do so. For this reason we certify the following question:

QUESTION CERTIFIED: Upon all the facts of this case, given the terms of the insurance policy and the reason for the insured's failure to give more prompt notice of the lawsuit to the insurer, should the insurer's disclaimer of coverage be sustained?

The New York Court of Appeals is, of course, invited, should it choose to grant certification, to address any other issues it deems germane to this question.

It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals, or once that court declines certification.