06-4715-pr
Fuentes v. Board of Education of the City of New York

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2007

(Argued: January 29, 2008     Question Certified: August 26, 2008)

Docket No. 06-4715-pr

--------------------------------------------------------x

JESUS FUENTES, as a Parent of a Disabled Child,

          Plaintiff-Appellant,

                    -- v. --

BOARD OF EDUCATION OF THE CITY OF NEW YORK, BARRY
MASTELLONE, Administrator of the HHVI of the Board of
Education of the City of New York, and DENISE
WASHINGTON, Chief Administrator of Impartial Hearing
Office of the Board of Education of the City of New
York,

          Defendants-Appellees.

--------------------------------------------------------x

B e f o r e :  WALKER, CALABRESI, and RAGGI, Circuit Judges.

     Plaintiff-appellant Jesus Fuentes appeals from an order of

the United States District Court for the Eastern District of New

York (Frederic Block, Judge) dismissing plaintiff's complaint on

behalf of himself and his disabled son, pursuant to the

Individuals with Disabilities Education Act.  The district court

dismissed plaintiff's complaint on the ground that plaintiff, as

the non-custodial parent of the child, lacked standing to bring such an action.  Because we find that plaintiff's standing turns on a question of New York law that has not been addressed by the New York Court of Appeals, we CERTIFY the question to the New York Court of Appeals.

LISA A. KEENAN, LeBoeuf, Lamb, Greene & MacRae LLP (Lawrence W. Pollack, LeBoeuf, Lamb, Greene & MacRae LLP, and Shawn V. Morehead and Lucy Eagling, Advocates for Children of New York, Inc., on the brief), New York, N.Y., for Plaintiff-Appellant.

SCOTT SHORR, Corporation Counsel of the City of New York, (Barry P. Schwartz, Corporation Counsel of the City of New York, of Counsel, on the brief), for Michael A. Cardozo, Corporation Counsel of the City of New York, for Defendants-Appellees.

JOHN M. WALKER, JR., Circuit Judge:

The primary question presented by this appeal is whether a biological and non-custodial parent of a disabled child has standing to sue under the Individuals with Disabilities Education Act ("IDEA") to vindicate rights granted by the IDEA.  Critical to this question is whether, under New York law, a biological and non-custodial parent of a child retains the right to make decisions regarding the child's education where the divorce

2

decree and custody order are silent as to the control of educational decisions. Because the subsidiary question has not been decided by the New York Court of Appeals, and because it is dispositive of the case, and because the answer to it will have broad implications for custodial disputes under New York law, we believe that the New York Court of Appeals should have the opportunity to address it. We therefore CERTIFY the question to the New York Court of Appeals.

**BACKGROUND**

Shortly after he was born, Mathew Fuentes ("Mathew") was diagnosed with a genetic visual disorder that rendered him legally blind. In 1996, Mathew's parents, Jesus Fuentes ("Fuentes") and Karen Fuentes, were divorced. On August 1, 1996, an "Order Directing Custody" was entered, granting Mathew's mother exclusive custody of Mathew. Mathew attended New York City public schools, where he received special education services to accommodate his disability.

In 2000, because Fuentes believed that the education accommodations Mathew received were inadequate, Fuentes requested that Mathew be reevaluated for additional services. After the Committee on Special Education for the Hearing, Handicapped, and Visually Impaired determined that Mathew's current services were adequate, Fuentes requested a hearing to review the committee's

3

determination.  On January 8, 2001, the Impartial Hearing Office denied Fuentes's request for a hearing.  Its Chief Administrator, Denise Washington, based her denial on Fuentes's custodial status.  Because Fuentes was the non-custodial parent of Mathew, Washington determined that he was not the "person in parental relation" as defined in N.Y. Educ. Law § 3212.  Accordingly, Washington concluded that Fuentes did not have the right to participate in educational decisions affecting Mathew and refused to process Fuentes's requests.  Fuentes then brought this suit in the District Court for the Eastern District of New York against the New York City Board of Education ("BOE")under 42 U.S.C. § 1983 and Section 1415(f)(1) of the IDEA, 20 U.S.C. § 1415(f)(1).

Fuentes's pro se complaint alleged that he was denied his rights under the IDEA (1) to review the BOE's written assessment of Mathew's special education needs and (2) to be granted an impartial hearing to petition for reconsideration of the BOE's determination that Mathew did not need additional special instruction.  The BOE moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b) and (c), on the ground that Fuentes, as Mathew's non-custodial parent, lacked standing under the IDEA to exercise those rights.  In the alternative, the BOE argued that Fuentes's failure to join a necessary party (Karen Fuentes) warranted dismissal.

The district court (Frederic Block, Judge), applying Taylor

4

v. Vt. Dep't of Educ., 313 F.3d 768 (2d Cir. 2002), held that it was required to look to state law to determine whether a biological and non-custodial parent retains the power to make special education decisions where the custody order and divorce decree are silent in this respect. Although acknowledging that New York law was not definitive on the question, the district court concluded that under New York law a non-custodial parent has no right to make special education decisions for the child, and, therefore, that Fuentes lacked standing to bring the action.

Fuentes appealed that ruling to this court. In a summary order, we agreed with the district court that our holding in Taylor applied and that New York state law "would generally be determinative of whether a non-custodial parent could exercise the rights granted by the IDEA." Fuentes v. Bd. of Educ. of N.Y., 136 F. App'x 448, 449-50 (2d Cir. 2005). We did not accept, however, the district court's conclusion that New York law denied Fuentes, as the non-custodial parent, the right to participate in decisions with regard to the child's education. Because we did not "readily find controlling New York State authority to guide our review," we stated our inclination to certify the question to the New York Court of Appeals. Id. at 450. Before doing so, however, we remanded the case to the district court so it could address the BOE's alternative ground for dismissal: Fuentes's failure to join Karen Fuentes in the suit.

On remand, the district court ruled that Karen Fuentes's absence from the suit did not warrant dismissal, but again dismissed Fuentes's case for lack of standing. Fuentes now appeals that ruling. The parties do not dispute the district court's resolution of the joinder issue. Thus, we must address whether Fuentes has standing to bring this action under the IDEA.

**DISCUSSION**

**I.  Legal Standard**

We review the district court's dismissal of a complaint for lack of standing de novo, accepting as true all material allegations in the complaint and construing the complaint in favor of the complaining party. Connecticut v. Physicians Health Servs. of Conn., Inc., 287 F.3d 110, 114 (2d Cir. 2002).

**II.  Preliminary Issues**

Before turning to the question to be certified to the New York Court of Appeals, we must first address Fuentes's contention that certification is unnecessary because federal law is dispositive of the case. He makes two arguments on this score. First, Fuentes claims that, under Taylor, if the divorce decree and custody order do not specifically revoke a parental right, the non-custodial parent retains that right for purposes of the IDEA. Second, Fuentes claims that amendments to the IDEA create

6

a presumption as a matter of federal law that biological parents retain rights to sue under the IDEA as long as the custody order and divorce decree do not restrict the biological parent's rights with regard to control of education decisions, irrespective of the biological parent's status under state law. Fuentes is incorrect on both counts.

**A.   Taylor**

Although "neither the IDEA nor its federal regulatory scheme are models of clarity," we have consistently held that the "Act does not usurp the state's traditional role in setting educational policy." Taylor, 313 F.3d at 776-77. To that end, the "statute 'incorporates state substantive standards as the governing federal rule' if they are consistent with the federal scheme and meet the minimum requirements set forth by the IDEA." Id. at 777 (internal citation omitted). In Taylor, as in this case, the non-custodial parent wished to assert rights under the IDEA. However, unlike this case in which the divorce decree is silent on the point, the Vermont divorce decree in Taylor provided that the custodial parent was "allocate[d] all legal rights and physical rights regarding the choice of schooling for the child." Id. at 772. The only power with regard to schooling that the non-custodial parent retained under the decree was the "right to reasonable information regarding the child's progress in school." Id.

Despite the divorce decree's explicit grant of power to the

custodial parent, Taylor, the non-custodial parent, argued that she retained the right to sue under the IDEA to enforce parental rights.  Id.  Her ability to do so turned on "whether [she was] considered a 'parent' within the meaning of [20 U.S.C. § 1401(19)(1997)]."  Id. at 776.  At that time, the statute contained the following provision:

> The term "parent"--
>
> (A) includes a legal guardian; and
>
> (B) except as used in sections 1415(b)(2) and 1439(a)(5) of this title, includes an individual assigned under either of those sections to be a surrogate parent.

20 U.S.C. § 1401(19)(1997).  The Department of Education's regulations implementing the IDEA at that time contained the following, more comprehensive definition:

> (a) General.  As used in this part, the term parent means--
>
> (1) A natural or adoptive parent of a child;
>
> (2) A guardian but not the State if the child is a ward of the State;
>
> (3) A person acting in the place of a parent (such as a grandparent or stepparent with whom the child lives, or a person who is legally responsible for the child's welfare); or
>
> (4) A surrogate parent who has been appointed in accordance with § 300.515.

34 C.F.R. § 300.20(a)(1999).

We reasoned that 20 U.S.C. § 1401(19)(1997) did not provide an exhaustive definition of the term "parent."  Taylor, 313 F.3d at 777.  We stated that "[e]ven if the use of the expansive term

8

'includes' did not carry with it the strong implication that the statute's definition of parent encompassed more than the two categories specifically referenced, we would find it difficult to credit a reading that excluded natural parents from the list of persons who could exercise parental rights under the statute." Id. As to the non-custodial parent's claim that the regulations conveyed standing upon her, we concluded that the IDEA, in combination with the Department of Education's regulations implementing it, indicate that the listed persons qualifying as "parents" "may or may not be entitled to exercise parental rights under the statute. Hence, the natural reading is that the federal regulation establishes a range of persons who may be considered a parent for purposes of the IDEA, but does not require that any and all such persons must be granted statutory rights." Id. at 778 (emphasis in original). We thus determined that "[g]iven the nature of the statutory scheme, [courts must] look to state law . . . to establish which potential parent has authority to make special education decisions for the child." Id. at 779.

After making these preliminary determinations, we applied state law. With regard to Taylor's demand for a hearing under the IDEA, we noted that under Vermont law, "Taylor's parental right to participate in her daughter's education has been revoked by a Vermont family court." Id. at 782. Accordingly, we held that Taylor lacked standing under the IDEA to demand a hearing.

9

Id. With regard to Taylor's records access claim, however, we found that, under the custody decree, Taylor retained "the right to reasonable information regarding the child's progress in school" and therefore had standing to bring a claim for access to records under the IDEA. Id. at 782, 786 (internal quotation omitted).

In this case, Fuentes does not dispute that Taylor controls our analysis. He argues, however, that despite Taylor's direction that we must look to state law to determine standing, we need only look to the divorce decree and custody order to determine his rights and that Fuentes's divorce decree does not revoke his right to participate in his son's education. He points to language in Taylor that a "parent's rights under the IDEA must be determined with reference to the rights [he] retains under the state custody decree," id. at 786, and asserts that, in the absence of a controlling provision in the divorce decree or custody order to the contrary, he retains parental rights and thus has standing.

Fuentes's argument is unpersuasive. While it is true that in Taylor we looked to the divorce decree to ascertain which parent retained the right to control the child's education, we did so because an affirmative provision in the decree one way or the other would be controlling under Vermont law. Similarly, in Fuentes's case, we will analyze whether the terms of his divorce decree entitle him to make educational decisions for his son

10

according to New York law. Whether that state's law requires an affirmative revocation in order to deny Fuentes the right to participate in his son's education will be decided by the New York Court of Appeals should it choose to accept certification in this case. See infra at 18.

Fuentes makes much ado about our statement in Taylor that "[b]ecause the custody decree has not 'specifically revoked' her informational access prerogatives, Taylor may pursue her record-access claim under the IDEA." Id. at 786. He argues that this statement makes clear that in our Circuit, if a decree does not "specifically revoke" a parental right, the non-custodial parent retains that right. However, to so hold would contravene the entire thrust of the Taylor opinion that we must look to state law for the answer as to parental rights. Fuentes misreads Taylor's application of state law to be an application of federal law; nowhere in that case did we federalize family law by creating a rule that, for IDEA purposes, parents retain all rights not explicitly revoked by custody decrees. Moreover, we think that this statement in Taylor was an inaccurate rendition of the custody decree in that case, and, in any event, dicta. The decree in Taylor was not silent as to the non-custodial parent's rights to information as to the child's education. It specifically provided that the non-custodial parent retained the right to reasonable access to information. Id. at 772. Thus, a Vermont court had already determined that Taylor had a right to

11

such information under state law.  And following the rule that state law is determinative on parental rights under the IDEA, we concluded that Taylor had standing to sue for access to this information in federal court.  In sum, we reject Fuentes's argument that the custody order's silence here is determinative in his favor.

**B.    Amendments to the IDEA**

Fuentes also argues that, in response to court decisions struggling with why biological parents were not specifically included in the meaning of the term "parent" in the IDEA, Congress amended the IDEA in 2005 in ways that "have made the intention of the IDEA in relation to 'parents' far more certain." Appellant's Br. at 21.

The IDEA now provides that:

> The term "parent" means--
>
> (A) a natural, adoptive, or foster parent of a child . . .

20 U.S.C. § 1401(23)(2005).  Furthermore, Fuentes contends that new DOE regulations enacted pursuant to the IDEA create a presumption in favor of standing for biological parents and that this presumption operates to confer standing upon him.  The regulations provide:

> (b)(1) Except as provided in paragraph (b)(2) of this section, the biological or adoptive parent, when attempting to act as the parent under this part and when more than one party is qualified under paragraph (a) of this section to act as a parent, must be presumed to be the parent for purposes of this section

12

unless the biological or adoptive parent does not have legal authority to make educational decisions for the child.

(2) If a judicial decree or order identifies a specific person or persons under paragraphs (a)(1) through (4) of this section to act as the "parent" of a child or to make educational decisions on behalf of a child, then such person or persons shall be determined to be the "parent" for purposes of this section.

34 C.F.R. § 300.30(b)(2006). Fuentes posits that these changes create a presumption that a biological parent retains a right to sue under the IDEA regardless of custodial status so long as the decree at issue does not restrict the biological parent's rights with regard to educational decisions. He further argues that his position is supported by the drafters' comments in the 2006 regulations of the Department of Education which provide that "[i]n situations where the parents of a child are divorced, the parental rights established by the Act apply to both parents, unless a court order or State law specifies otherwise." 71 Fed. Reg. 46,540, at *46,568 (August 14, 2006). The BOE contests this interpretation and argues also that if Fuentes is correct, applying the new rule would pose retroactivity concerns.

We need not address the BOE's retroactivity concerns because the 2006 changes do not affect Fuentes's case. Importantly, Fuentes ignores the language in the DOE regulations that state that the presumption will not apply if the "biological or adoptive parent <u>does not have legal authority to make educational decisions</u> for the child." 34 C.F.R. § 300.30(b)(1) (emphasis

13

added).[1]  And Taylor makes clear that we look to state law to determine who has such legal authority.  Thus, after the 2006 amendments to the statute and the regulations, state law is still determinative of Fuentes's appeal.  We now turn to that question.

**C.    The Question Certified**

Under New York law and Second Circuit Local Rule § 0.27, we may certify to the New York Court of Appeals "determinative questions of New York law [that] are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists."  N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a) (2008).  This "process provides us with a valuable device for securing prompt and authoritative resolution of questions of state law."  Briggs Ave., LLC v. Ins. Corp. of

---

[1]    Fuentes does not argue that the 2006 amendments to the IDEA alone create standing for all natural parents to sue.  Nor would we find such an argument tenable.  In amending the IDEA, Congress adopted the DOE regulation's former list of permissible persons who may be considered a parent for purposes of the IDEA.  As we stated in Taylor, the former "regulation establish[ed] a range of persons who may be considered a parent for purposes of the IDEA, but d[id] not require that any and all such persons must be granted statutory rights."  313 F.3d at 778.  In amending the statute, Congress did nothing that calls into question our interpretation of the former regulation, which is now incorporated into the current statute's definition of parent.  We thus conclude that the 2005 amendments establish a range of persons who may exercise rights under the IDEA, but do not require that any and all such persons must be granted rights.  Furthermore, because the IDEA does not clearly establish who has standing to sue when multiple persons qualify as "parents" under the statute, the new regulations' presumption in favor of biological and adoptive parents, and corresponding exception where the parent lacks legal authority to act on behalf of the child, are reasonable agency interpretations of the statute as amended and thus entitled to deference.  See Chevron v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984).

14

*Hannover*, 516 F.3d 42, 46 (2d Cir. 2008) (internal quotation marks and citation omitted).

The parties' briefing and our own research have not uncovered controlling precedent from the New York Court of Appeals as to whether the biological and non-custodial parent of a child retains the right to participate in decisions pertaining to the education of the child where (1) the custodial parent is granted exclusive custody of the child and (2) the divorce decree and custody order are silent as to the right to control education decisions.

In *Weiss v. Weiss*, 52 N.Y.2d 170 (1981), a non-custodial parent sued to enjoin the custodial parent from leaving the state to take up residence in Las Vegas, Nevada. *Id.* at 173-74. The separation agreement at issue in the case gave the non-custodial parent broad visitation rights, of which the non-custodial parent regularly availed himself. *Id.* at 173. The court ruled that the custodial parent's planned move impermissibly interfered with these visitation rights and upheld the appellate division's injunction prohibiting the move. In a separate concurring opinion, Judge Meyer wrote to express his agreement with "the result on the facts and in the posture of th[e] case," but also added that the majority gave "too little consideration to the principle . . . that it is the right of the custodial parent, absent controlling contrary provisions in a separation agreement, to determine the child's secular education program and religious

15

education program." Id. at 177 (internal citation omitted). Though Judge Meyer's statement suggests that custodial parents retain the right to control the child's educational program absent a controlling provision in the custody order or divorce decree, it was made in a concurrence and, therefore, is not controlling precedent in New York.

In De Luca v. De Luca, 609 N.Y.S.2d 80 (App. Div. 2d Dep't 1994), a case where the non-custodial parent was concerned about the child's exposure to the mother's choice of religion, the court stated that "[w]hether the subject matter is religion, health care, or education, absent an agreement, the court will not interfere with the custodial parent's decisions regarding the children's upbringing." Id. at 81. Similarly in Stevenot v. Stevenot, 520 N.Y.S.2d 197 (App. Div. 2d Dep't 1987), the court refrained from interfering with the custodial parent's religious education decisions, finding that, absent an agreement between the divorcing parents, "the custodial parent is the proper party to determine the children's religious training." Id. at 198. And again in De Beer v. De Beer, 556 N.Y.S.2d 299 (App. Div. 1st Dep't 1990), the court refused to interfere with the custodial parent's choice of religious education for the child, noting that religious education decisions are "appropriately left in the hands of the custodial parent absent compelling circumstances." Id. at 300. In Parrinelli v. Parrinelli, 524 N.Y.S.2d 159 (Sup. Ct. 1988), the court said that where an enforceable agreement

16

controlling the rights to make educational decisions is absent and where the custodial and non-custodial parent disagree, "the choice rests with . . . the custodial parent." Id. at 161.

The position of the New York State Commissioner of Education appears to be in line with the thinking of these cases. In an opinion dismissing a non-custodial parent's appeal of the denial of a hearing pursuant to the IDEA, the agency reasoned that "[b]y granting custody of a child to only one of the child's parents, a court necessarily determines that the custodial parent shall be responsible for decisions relative to the child's welfare, including education." Appeal of Carubia, 25 Ed. Dept. Rep. 256, 258 (Jan. 14, 1986), E.H.L.R. Dec. 507:468 (SEA, N.Y. 1986).

Finally, New York treatises appear to have adopted the New York Appellate Division's pronouncements as the law, stating that when "exclusive custody has been awarded to one parent, the custodial parent, absent an enforceable agreement, has the exclusive authority to decide matters of the child's education." 45 N.Y. Jur. 2d Dom. Rel. § 516; see also 2-34 N.Y. Practice Guide: Domestic Relations § 34.01 ("an award of custody to one party traditionally accords that party physical custody, i.e., actual possession and control of a child . . . as well as decision-making authority").

Although the above lower court authority strongly indicates that under New York law a non-custodial parent does not retain the right to participate in education decisions for the child,

17

there is no controlling New York Court of Appeals authority on point. While we might normally accept the unanimous decisions of two departments of the Appellate Division as sufficiently determinative to allow us to decide this case, we are reluctant to take that final step in the absence of a Court of Appeals pronouncement because the ruling has broad implications affecting the custodial arrangements in New York--a matter of paramount state concern. Because the question is determinative of the case before us and is one for which no controlling precedent exists, we choose to certify the question to the New York Court of Appeals.

QUESTION CERTIFIED: Whether, under New York law, the biological and non-custodial parent of a child retains the right to participate in decisions pertaining to the education of the child where (1) the custodial parent is granted exclusive custody of the child and (2) the divorce decree and custody order are silent as to the right to control such decisions.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Clerk of Court transmit to the Clerk of the New York Court of Appeals a copy of this opinion and a complete set of briefs, appendices, and record filed by the parties in this court.